# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| BILL MONTAGNE, | ) | |
| | ) | |
| Plaintiff, | ) | 3:06-cv-00246 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| SAFECO INSURANCE COMPANY OF ILLINOIS, | ) | [Re: Motion at docket 42, 49] |
| | ) | |
| Defendant. | ) | |

## I. MOTIONS PRESENTED

Defendant Safeco Insurance Company of Illinois ("Safeco") filed a motion for partial summary judgment at docket 42 which asks the court to (1) declare that the arbitration clause in the policy of insurance it issued to plaintiff Bill Montagne ("Montagne") does not violate public policy and is enforceable; (2) rule that as a matter of law Safeco has not waived its right to trial by jury; and (3) issue an order excluding any testimony from Montagne's expert, Stan Garlington ("Garlington"), about the arbitration clause and Safeco's right to a jury trial. Montagne filed a partial opposition at docket 54 to which Safeco replied at docket 60. Montagne does not oppose the request for a declaration that the arbitration clause does not violate public policy and is enforceable, nor does he oppose a ruling that Safeco has not waived its right to a jury trial, "except to the extent that Safeco attempts to limit Mr. Montagne from asserting that the way Safeco uses litigation to resolve its UIM claims and its motives for refusing

arbitration constitute bad faith."[1]  Safeco's reply indicates that on the bad faith issue, it is entitled to a ruling as a matter of law that its "decision not to arbitrate Montagne's claim was reasonable as a matter of law."[2]  Thus, Safeco asserts there is no basis for Montagne's assertion that its refusal to arbitrate "breached the covenant of good faith and fair dealing."[3]

At docket 49, Safeco filed a related motion *in limine* asking the court to exclude testimony from Garlington "interpreting regulatory or contractual language, including testimony regarding Safeco's right to a jury trial, and [providing] opinions relating to whether Safeco's consensual arbitration clause is against public policy."[4]  Montagne filed an opposition at docket 56 to which Safeco replied at docket 61.

Oral argument has not been requested on either motion.  Oral argument would not be of assistance to the court.

## II.  BACKGROUND

Montagne was injured in an automobile accident on January 8, 2004, while driving a Chevrolet pick-up insured by Safeco.  A copy of insurance policy is found at docket 43-2, attached to Affidavit of Deborah Campbell and labeled Exhibit A to the affidavit. It is policy number H1788240.  ("Safeco Policy")  The Safeco Policy included uninsured and underinsured motorist ("UIM") coverage of $250,000 per person plus medical payments coverage of $5,000 per person.  The accident was caused by another motorist, Benjamin Brekke.  Brekke had a GEICO liability policy with a $50,000 limit.  Safeco paid the $5,000 limit on its medical payments coverage and made a subrogation claim for reimbursement against Brekke.  Montagne settled with Brekke on or about November 30, 2005, for the GEICO policy limit.  GEICO paid $45,000 to Montagne and $5,000 to Safeco on the subrogated medical payments claim.  Safeco acknowledged that the only third-party coverage available had been exhausted and then

---

[1] Doc. 54 at p. 2.

[2] Doc. 60 at p. 5.

[3] *Id.*

[4] Doc. 49 at p. 1.

offered to make a payment to Montagne under the UIM coverage such that Montagne's total recovery from GEICO, the Safeco medical payments coverage and the Safeco UIM coverage, would be $75,000. Safeco's settlement offer was not accepted, and it has made no payment to Montagne beyond the $5,000 paid under the medial payments coverage.

The parties have been unable to agree on the amount that should be paid to Montagne under the UIM coverage. That coverage contains an arbitration clause which addresses the circumstance in which the insurer and the insured cannot agree on the amount to be paid. It provides that such a dispute "may be arbitrated,"[5] but conditions arbitration on mutual agreement:

> Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.[6]

There were communications between Montagne and representatives of State Farm relating to the arbitration clause. A Safeco adjuster named Kim Smith sent Montagne a letter on July 13, 2006, in which she wrote that if they could not agree on the amount to be paid, the Safeco policy "contains the following language" after which she quoted the entire arbitration clause from the Safeco Policy.[7] The letter said nothing about whether Safeco would agree to arbitrate. About a month later, a Safeco employee named Elizabeth Strain responded to an e-mail from Montagne. Strain's e-mail pointed out that if an agreement were not reached, then the Safeco Policy contemplated "resolution of damages disputes via jury trial or arbitration. (Please refer to your policy . . . .) That's certainly an option for you."[8] Speaking to Montagne the next day, Smith told Montagne that Safeco would likely prefer to resolve the dispute via jury

---

[5] Safeco Policy, doc. 43-2 at Exhibit A p. 15.

[6] *Id.* at p. 16.

[7] Doc. 44-2, pages 2-3 of Exhibit A to Affidavit of Kim Smith.

[8] Doc. 1-2, Exhibit 2 to Montagne's complaint.

trial rather than via arbitration.⁹  Smith's prediction was correct; Safeco demanded trial by jury after the case was removed to this court.¹⁰

Safeco designated John Hillderbrand to testify on its behalf at a deposition taken to inquire into the UIM coverage's arbitration provision.¹¹  Hillerbrand's testimony shows that Safeco leaves the decision on whether to arbitrate a dispute with an insured to the discretion of the individual adjusters, but Safeco provides no guidelines for the adjusters to use when they exercise their discretion.¹²

### III.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.¹³  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.¹⁴  Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.¹⁵  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.¹⁶  However, the non-moving party may not rest upon mere allegations or denials, but must

---

⁹Doc. 44-3, Exhibit B and ¶ 5 of  Affidavit of Kim Smith.

¹⁰Doc. 5 at p. 7.

¹¹Doc. 54-4, Deposition of John Hillerbrand ("Hillerbrand Dep.") at p. 105-106 of the deposition transcript.

¹²*Id.* at pp. 105-108.

¹³*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

¹⁴*Celotex*, 477 U.S. at 323-325.

¹⁵ *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-9, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

¹⁶*Anderson*, 477 U.S. at 255.

show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[17]

## IV. DISCUSSION

### A. Motion at Docket 42

Under Alaska law, an insurance company may be liable in tort to its insured where the insurer's conduct in adjusting the assured's claim is unreasonable, but the Alaska court has left open the question of whether the conduct must also be "fraudulent or deceptive."[18] Montagne's concessions and Safeco's reply memo have transformed the substantive dispute framed by the motion at docket 42 to a single question. Is Safeco entitled to judgment as a matter of law that its conduct in refusing to arbitrate was reasonable? Safeco's sole argument in support of an affirmative answer is that because the mutual consent requirement in the arbitration clause does not violate public policy and is enforceable, there could have been nothing unreasonable in Safeco's decision not to arbitrate. Neither party cites any Alaska case law which addresses this precise issue.

Safeco's argument is not persuasive. Two simple hypotheticals illustrate why. Suppose that in a similar dispute between Acme Insurance and Joe Insured, Acme's adjuster decided not to arbitrate the amount of damages to be paid to Joe for the purpose of forcing Joe to accept an offer made by the adjuster in order to avoid hiring an attorney and enduring the expensive and lengthy trial process. In the hypothetical, there can be no doubt that Acme's action was unreasonable. Indeed, in the hypothetical, Acme's action was also taken in bad faith. Consider a second hypothetical in which Acme's adjuster simply tosses a coin to decide whether to arbitrate. That decision would be unreasonable, but less clearly an action taken in bad faith. The fact that there could be an unreasonable basis for deciding not to arbitrate eviscerates the argument that because a mutual consent arbitration provision is enforceable in the abstract, it is enforceable in every case regardless of the underlying facts.

---

[17] *Id.*, 477 U.S. at 248-49.

[18] *Hillman v. Nationwide Mutual Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993).

Given that a refusal to arbitrate *could* be unreasonable, and that Montagne does not concede it was reasonable here, to secure a ruling that as a matter of law the decision not to arbitrate was reasonable, Safeco must demonstrate that the undisputed facts show this to be so. Yet, there is no indication in the record before the court why Safeco chose not to arbitrate. Indeed, it is not even clear who made the decision. Hillerbrand's deposition indicates that it would have been an individual adjuster. If it was adjuster Kim Smith who made the decision, it is curious that her affidavit does not address the point. If another adjuster made the decision, his or her affidavit has not been provided. Under these circumstances, Safeco is not entitled to a ruling that its decision not to arbitrate was reasonable as a matter of law.

The final topic raised in the motion at docket 42 concerns the admissibility of testimony by Garlington. That is the singular topic of the motion at docket 49, so it will be addressed in the next section of this order.

**B. Motion at Docket 49**

From the discussion above, it is clear that two topics of central concern in this litigation are whether Safeco's decision not to arbitrate was reasonable, and if not whether the decision was made in bad faith. The issue with respect to Garlington's testimony is whether, and if so to what extent, it should be admitted to assist the jury in deciding those issues.

Rule 702 of the Federal Rules of Evidence provides in relevant part as follows:

> If . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data,(2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The jury cannot be expected to have experience in determining when it would be reasonable to arbitrate a dispute rather than to have it decided in a jury trial or experience in assessing what kinds of actions by an insurance company might signal bad faith. It follows that specialized knowledge would assist the trier of fact to understand the evidence and to determine the facts in issue. An examination of

Garlington's long experience in the insurance industry working for several insurance companies in capacities including adjuster, home office examiner, multiline supervisor, regional claim manager, lawsuit examiner, which was followed by eleven years working in the Alaska Department of Insurance, establishes that he is qualified by his experience to offer opinion testimony regarding factors that ought to be considered when deciding whether a decision not to arbitrate a disputed insurance payment is reasonable.[19]

Safeco identifies several topics about which it contends Garlington should not be permitted to offer testimony. Two are easily decided. Montagne has conceded that the arbitration clause in the Safeco Policy is valid and enforceable, and that Safeco has not waived its right to jury trial. It follows that Garlington will not be permitted to offer opinion testimony on the validity of the clause or on the topic of waiver.

A third topic identified by Safeco is closely related to the waiver of jury trial issue just discussed. It is the proposition that in Strain's August 10, 2006, e-mail she consented to arbitration. A plain reading of the document shows that it contains no consent to arbitration. Rather, it says that the dispute may be resolved by "jury trial or arbitration"[20] and referred Montagne to the relevant policy provision. While it may be true that the policy does not specifically state that if either party fails to agree to arbitration the alternative is a trial, that merely reflects the fact that the default dispute mechanism for contract disputes in the United States is trial. Yet, in his report, Garlington does say: "It is my opinion that Stain's August 10, 2006 e-mail to Montagne is an agreement by Safeco to arbitrate Montagne's damages claim if the claim cannot be settled." This statement simply cannot pass muster under Rule 702 which requires that an opinion be based on sufficient data and the product of reliable principles and methods actually applied by the witness. It also conflicts with Montagne's concession that Safeco has not waived its right to jury trial. Garlington will not be permitted to offer opinion testimony that the e-mail contains a consent to arbitrate.

---

[19]Garlington's many years of experience is laid out in detail at doc. 54-2 in the Qualifications section of the Disclosure of Expert Witness Testimony of Stanley Garlington attached to the Affidavit of Stanley Garlington.

[20]Doc. 1-4 at p. 17.

7

Another topic identified by Safeco relates to statements Garlington makes with respect to his qualifications. Qualifications emanating from his experience reviewing and working with state insurance regulations, Safeco argues, improperly imply that Garlington himself drafted "the actual regulations to the Unfair Claim Settlement Practices Act."[21] The court finds no reason to preclude testimony from Garlington laying out his experience as an employee of the Alaska Division of Insurance reviewing and working with regulations. Cross-examination rather than exclusion of the evidence is the remedy here, if it be thought that inaccurate inferences would be drawn by the fact finder. Safeco is not entitled to an order preventing Garlington from laying out in reasonable detail his experience as an employee of the Division of Insurance.

Safeco challenges the proposition that Garlington may offer opinion testimony related to the reasonableness and bad faith issues as they relate to Safeco's compliance with regulations which govern the adjustment of claims in Alaska, Safeco's adherence to industry practices ordinarily followed in adjusting claims, and the meaning of Safeco policy provisions required by Alaska law. Garlington is qualified by his experience to identify relevant regulations and industry practices, and to connect certain of Safeco's policy provisions to various requirements of Alaska law. Furthermore, it would be helpful to the finder of fact to hear opinion testimony indicating which actions or inactions by Safeco relate to which regulation, industry practice or legally required policy provision. That said, it is also true that while an expert may offer an opinion on an issue of fact which is ultimately one to be determined by the jury, an expert may not offer an opinion on an issue of law, because it is for the court to determine the applicable law.[22]

Here, Safeco is correct to contend that Garlington may not offer opinion testimony that its conduct amounted to bad faith or was unreasonable because such testimony would be an expression of opinion on a legal issue. On the other hand, he may offer testimony to the effect that Safeco acted inconsistently with industry

---

[21]Doc. 49 at p. 4.

[22]*E.g., Nationwide Transport Finance v. Cass*, 523 F.3d 1051, 1058 (9th Cir. 2008).

8

standards from which the finder of fact could infer that Safeco acted unreasonably, in bad faith, or both. This conclusion is amply supported by the Ninth Circuit's decision in *Hangarter v. Provident Life & Accident Ins. Co.*[23] There, plaintiff Hangarter offered expert testimony from a man named Caliri who, like Garlington, had many years of experience in the insurance business. Provident argued on appeal that Caliri's testimony to the effect that the defendants' conduct did not comply with industry standards amounted to an improper expression of a legal conclusion. The argument was rejected by the Ninth Circuit which made the following point: "While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith . . . ."[24] Garlington's opinion testimony might also support a finding that Safeco acted unreasonably, but he may not testify that Safeco acted unreasonably.

With respect to the regulations which bear on Safeco's conduct, this court holds that the same analytical framework governs. As the Ninth Circuit explained in *Hangarter,* an expert's opinion may refer to the applicable law in connection with his opinions.[25] Garlington may identify regulations which in his opinion relate to reasonableness or bad faith. He may also provide opinions respecting whether or not Safeco's conduct deviated from practices followed by the industry with respect to such regulations. However, he may not offer an opinion as to the meaning of the regulation or whether Safeco's deviation was necessarily unreasonable or amounted to bad faith. In addition, it must be noted that Galington may not opine as to the public policy issues the regulator intended to address when adopting any regulations, but he may offer an opinion identifying prior industry practices to which the regulations might apply.

The last area concerns provisions in the Safeco policy. Garlington is not qualified to ascribe intent to Safeco in drafting such provisions, but he is qualified to

---

[23]373 F. 3d 998 (9th Cir. 2004).

[24]*Id.* at 1016.

[25]*Id.* at 1017.

9

offer opinion testimony as to whether or not actions taken in conformity with the provisions would deviate from industry standards.  As with the regulations, however, Garlington may not offer an opinion that any Safeco policy provision is necessarily unreasonable or constitutes bad faith.

More specific rulings on testimony which may be elicited from Garlington cannot be made in advance of trial.  The discussion above should provide an adequate framework for both parties to understand generally what may and what may not be included in Garlington's testimony.

## V.  CONCLUSION

For the reasons above, the motion at docket 42 is **GRANTED in part and DENIED in part** as follows:

(1) The arbitration clause in the Safeco Policy does not violate public policy and is enforceable;

(2) Safeco has not waived its right to trial by jury;

(3) Safeco is not entitled to a declaration that as a matter of law its decision not to arbitrate was reasonable; and

(4) Portions of Garlington's proposed testimony will be excluded and others admitted consistent with the discussion in Section IV of this order; and

the motion at docket 49 is **GRANTED in part and DENIED in part** such that Garlington's testimony will be restricted in keeping with discussion in Section IV above.

DATED at Anchorage, Alaska, this 27th day of May.


/s/ JOHN W. SEDWICK
UNITED STATE DISTRICT JUDGE