**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | | |
|---|---|---|
| BILL MONTAGNE, | ) | |
| | ) | |
| Plaintiff, | ) | 3:06-cv-00246 JWS |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| SAFECO INSURANCE COMPANY | ) | [Re: Motions at dockets 71, |
| OF ILLINOIS, | ) | 72, 73, 74, 75, 76, and 85] |
| | ) | |
| Defendant. | ) | |

## I. MOTIONS PRESENTED

At docket 71, defendant Safeco Insurance Company of Illinois ("Safeco") asks the court to preclude certain testimony by David Berlier. At docket 96, plaintiff Bill Montagne ("Montagne") responds. Safeco's reply is at docket 115.

At docket 72, Safeco moves to exclude Montagne's proposed Exhibits 70 and 71. Montagne's response is at docket 94. Safeco replies at docket 116.

At docket 73, Safeco asks the court to exclude Montagne's proposed Exhibits 74 and 75. Montagne responds at docket 95. Safeco's reply is at docket 117.

At docket 74, Safeco moves to preclude the plaintiff himself from testifying as an expert witness. Montagne's response is at docket 97. Safeco replies at docket 118.

At docket 75, Safeco asks the court to limit the scope of testimony from plaintiff's treating physicians and health care providers. Montagne's opposition is at docket 93. Safeco's reply is at docket 120.

At docket 76, Safeco moves to exclude evidence relating to Safeco's subrogation claim. Montagne's opposition is at docket 90. Safeco replies at docket 114.

At docket 85, Safeco asks the court to strike fourteen witnesses from Montagne's witness list. Montagne's opposition is at docket 101. Safeco replies at docket 119.

Oral argument has not been requested on any of the motions. Oral argument would not be of benefit to the court.

## II.  BACKGROUND

On January 8, 2004, Montagne was injured in an automobile accident while driving a Chevrolet pick-up insured by Safeco. A copy of insurance policy is found at docket 43-2, attached to the Affidavit of Deborah Campbell and labeled Exhibit A to the affidavit. It is policy number H1788240. ("Safeco Policy") The Safeco Policy included uninsured and underinsured motorist ("UIM") coverage of $250,000 per person plus medical payments coverage of $5,000 per person. Benjamin Brekke, the other driver, was at fault for the accident. Brekke was insured by GEICO. Montagne settled with Brekke on or about November 30, 2005, for the $50,000 GEICO policy limit. Safeco paid the $5,000 limit on its medical payments coverage to Montagne and made a subrogation claim for reimbursement against Brekke. As a result, GEICO paid $45,000 to Montagne and $5,000 to Safeco. Safeco acknowledged that the only third-party coverage available had been exhausted and then offered to make a payment to Montagne under the UIM coverage such that Montagne's total recovery from GEICO, the Safeco medical payments coverage and the Safeco UIM coverage, would be $75,000. Safeco's settlement offer was not accepted, and it has made no payment to Montagne beyond the $5,000 paid under the medical payments coverage.

Safeco's UIM coverage contains an arbitration clause which addresses the circumstance in which the insurer and the insured cannot agree on the amount to be paid. It provides that such a dispute "may be arbitrated,"[1] but conditions arbitration on mutual agreement. Safeco did not agree to arbitration. Eventually, Montagne sued Safeco in state court seeking compensatory and punitive damages as well as equitable

---

[1]Safeco Policy, doc. 43-2 at Exhibit A, p. 15.

relief.[2] Safeco removed the lawsuit to this court.[3] Following motion practice which narrowed the issues in dispute, the case was set for trial. Presently, the case is set for a jury trial on February 2, 2009, on the issues of Safeco's liability for compensatory and punitive damages and the quantum thereof.

## III. DISCUSSION

### A. Motion at Docket 71

David Berlier is Montagne's accountant. According to Montagne's witness list, he is expected to testify at trial "about Montagne's before and after financial condition."[4] Berlier was not retained as an expert to provide opinion testimony at trial and no expert disclosure was made. Reduced to its essence, the question framed by the motion and response is the permissible scope of testimony by an injured plaintiff's accountant regarding plaintiff's financial condition when the accountant has not been designated as an expert witness. The answer, of course, (which both parties recognize in their papers) is that the accountant may offer lay testimony, but not expert opinion testimony. Thus, Berlier may offer testimony about what he has personally observed in Montagne's financial records. For example, Berlier might testify that prior to the accident Montagne's business income was "X" and afterwards it was "Y." By way of further example, Berlier may also testify as to how he calculated X and Y, and what information he used to do so. Berlier may not, however, offer an opinion as to what external factors caused Y to differ from X, nor may he offer an opinion as to what the income would be in future years. Safeco raised a new issue in its reply, the asserted inadequacy of Montagne's description of Berlier's testimony on his witness list. Raising new issues in a reply is not permissible.

---

[2] Doc. 1-4 at pp. 14-15.

[3] Doc. 1.

[4] Doc. 79 at p. 4.

-3-

## B. Motion at Docket 72

Safeco's motion seeks the exclusion of all documentary evidence and testimony relating to Montagne's proposed exhibits 70 and 71. Safeco seeks exclusion of the evidence on the grounds that the exhibits are hearsay which must be excluded pursuant to Fed. R. Evid. 802. Montagne contends that the exhibits may be admitted under exceptions to the proscription of hearsay evidence found in Fed. R. Evid. 803(3) and 803(6).

Exhibit 71 is a screen shot of a web page for an entity called the Bonati Institute. According to the exhibit, the Bonati Institute is some sort of outpatient surgery center where Dr. Alfred Bonati and other surgeons perform the "world famous Bonati Procedures." These procedures concern endoscopic and laser surgery on "problems of the cervical, thoracic and lumbar spine."

Exhibit 71 is an e-mail dated February 21, 2008, from Warren Taylor, the scheduling manager for the Bonati Institute, to Montagne. The e-mail reports that unnamed physicians at the Bonati Institute reviewed Montage's films and found evidence of bulging discs, degenerative disc disease, foraminal narrowing, and bone spurs. The e-mail adds that Bonati Institute surgeons have successfully treated others with similar problems. No particular procedure is identified, but it is suggested that if Montagne comes to the Institute, "one of our surgeons will then recommend a plan of treatment specifically for you."

Each of these exhibits is hearsay as defined in Rule 802. The exception set out in Rule 803(3) allows the admission of statements of the "declarant's then existing state of mind . . . ." Neither exhibit contains a statement of Montagne's state of mind. It is unknown who authored Exhibit 70, but it is clear that the state of mind of the creator of the Bonati Institute website is not relevant to this case. Similarly, the state of mind of Warren Taylor, who authored exhibit 71, is not relevant. Montagne asserts that the exhibits are relevant to his own state of mind, because he relied on them. That, however, is not something which falls within the exception upon which he relies. The exhibits may not be admitted pursuant to Rule 803(3).

-4-

The exception in Rule 803(6) is for business records. Assuming, for the sake of argument, that exhibits 70 and 71 could somehow be relevant and that the other requirements for admission of business records could be met through the testimony of Mr. Taylor or the records' custodian for the Bonati Institute, there is no witness on Montagne's witness list who could testify about the exhibits.[5] Absent the necessary witness, the exhibits cannot be admitted pursuant to Rule 803(6).

With respect to testimony that touches upon the information in exhibits 70 and 71, Montagne's lawyer may pose questions intended to elicit testimony that Montagne was informed by a medical institute in Florida that a review of his films indicated that he had bulging discs, degenerative disc disease, foraminal narrowing, and bone spurs. However, this testimony, if elicited, will not provide the basis for admission of the exhibits or testimony about the medical institute itself. Further, if such testimony is given, upon request from defendant, the court will give a limiting instruction to the jury advising that they may not consider what Montagne was told by the institute for its truth, but only for whatever value they might find it has with respect to explaining Montagne's actions.

## C. Motion at Docket 73

The motion at docket 73 seeks the exclusion of Exhibits 74 and 75 on the grounds that they are hearsay. The only argument Montagne advances to support admission of either exhibit is the exception to the exclusion of hearsay in Rule 803(3).

Exhibit 74 is an affidavit from an employee of the Alaska Department of Fish and Game who avers that, based on an attached harvest report, Montagne did not hunt mountain goats in 2004. Exhibit 75 is a letter from Montagne to himself dated August 20, 2008, advising that he killed a caribou near his tent, and a friend helped him with the carcass. The letter goes on to say that he would not have gone on the hunt alone, because he could not have packed the meat.

---

[5]The catchall reference to "records custodians previously disclosed" at item 17 on Montagne's witness list at docket 79 does not comply with the requirements of the final pre-trial order at docket 70 to name any witness who will be called.

-5-

Exhibit 74 is not a statement of the declarant's then existing state of mind; it is clearly not admissible under Rule 803(3). Exhibit 75 is not a declaration of Montagne's state of mind; rather, it is an attempt to memorialize in a letter his inability to pack meat. It is a self-serving hearsay statement about a physical condition. It is not admissible under Rule 803(3).

**D. Motion at Docket 74**

At docket 74, Safeco asks the court to preclude expert opinion testimony by plaintiff himself. Safeco takes the position that Montagne is not qualified to testify as an expert. In response, Montagne contends that he should be allowed to testify about "his own company's endeavors and competitiveness based on his own experience and research conducted in the course of operating his business."[6] He also contends that he should be allowed to testify about the projections and damage calculations he provided to Safeco during the adjustment of his claim.

Safeco urges that the facts show Montagne cannot qualify pursuant to Rule 702 to offer expert opinion testimony. No expert report for Montagne was prepared and served. Montagne's papers do not disclose any basis pursuant to which he could qualify to offer expert opinion testimony pursuant to Fed. R. Evid. 702. He points to no knowledge, skill, experience, training, or education sufficient to qualify. Rather, Montagne's papers emphasize that the operation of his own business is the source of his qualification. The court finds that Montagne is not qualified to offer expert opinion testimony pursuant to Rule 702. That said, Montagne is qualified to offer opinion testimony pursuant to Rule 701. Thus, his opinions which are rationally based on his own perceptions and activities–for example, welding–and which otherwise meet the requirements of Rule 701 will be admitted. Testimony which would require scientific, technical or other specialized knowledge–for example, opinions about metallurgy–will not be admitted.

Montagne may testify as to the projections and damage calculations he gave to Safeco. However, upon application, the court will give a limiting instruction advising the

---

[6]Doc. 97 at p. 1.

Case 3:06-cv-00246-JWS   Document 121   Filed 01/19/09   Page 6 of 15

jury that the basis for the projections and damage calculations is Montagne's experience in his business, and the projections and calculations may not be considered to be the result of the application of any expertise in finance or economics.

**E. Motion at Docket 75**

In its motion at docket 75, Safeco asks the court to preclude any testimony by plaintiff's health care providers which is outside the scope of the treatment given through the last date of such treatment. Montagne opposes on the grounds that as "hybrid witnesses" treating physicians may "testify about the areas they would normally be expected to know about, including causation of injury and prognosis, without [providing] any retained expert reports." The court agrees with Montagne.[7] Montagne also argues that the motion is untimely. However, the court specifically authorized motions as to "known, difficult evidentiary matters" in its final pre-trial order.[8] The motion is not untimely.

Pointing to the court's final pre-trial order, Safeco asserts that the description of the health care providers' testimony is not sufficiently specific to comply with the order which mandates a "specific not general" description.[9] The court first considers the proposed testimony from Dr. Barrington and Dr. Martin. The descriptions of their testimony found on Montagne's witness list are adequate.[10] Safeco also expresses concerns about the testimony of four other health care providers identified as Michael Wedge, Michael D. Massey, S. Peter Chon, and Joseph J. Hawkins. However, none of

---

[7] *See, Miller v. Phillips*, 959 P. 2d 1247, 1250-51 (Alaska 1998).

[8] Doc. 70 at p. 4, ¶ 5.

[9] *Id.*, at p. 2, ¶ 3.

[10] The descriptions are found on p. 3 of doc. 79 and are essentially identical. Each doctor is described as a treating medical care provider. Each is "expected to testify about Montagne's injuries, treatment, causation, history, prognosis, future medical treatment, expenses, [and] communications with Safeco." Each description adds: "In particular, he is expected to describe the nature and extent of Montagne's injury from the auto collision at issue in this case."

those persons is included on Montagne's trial witness list.[11]  Thus, it does not appear that Montagne intends to call any of the four as a witness.  Even if he does, his failure to include them on the final witness list makes it impossible for any of the four to testify at trial.[12]

**F.  Motion at Docket 76**

At docket 76, Safeco seeks to prevent the jury from hearing any evidence relating to the circumstances in which it exercised its subrogation rights to claim $5,000 of the $50,000 policy limit contributed by Brekke's insurer, GEICO, to settle Montagne's claim against Brekke.  The basis for excluding the evidence advanced by Safeco is that it is not relevant to any issue in the lawsuit.  Fed. R. Evid. 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  One of the claims the jury must resolve is whether Safeco acted in bad faith in adjusting Montagne's claim.  As demonstrated in Montagne's opposition to the motion, the manner and timing of Safeco's handling of the subrogation issue does add to the possibility that Safeco acted in bad faith.  The evidence will not be excluded under Rule 401.

**G.  Motion at Docket 85**

The last in Safeco's series of motions contends that the description of the testimony of almost every witness on Montagne's witness list fails to comply with the requirements of the court's order for final pre-trial proceedings.  Montagne's position is that the descriptions of testimony are adequate.

The order was not created for this case.  In fact, the order is in substance identical to the final pre-trial orders which this court has used in every civil case since 1992, and which other judges of this court have used since at least some time in the 1980's.  The provision in question reads in pertinent part as follows:

---

[11] *See,* Plaintiff's Revised Final Witness List at docket 79.

[12] Doc. 70 at p. 2, ¶ (3).

> <u>Witnesses</u>. On or before DECEMBER 15, 2008, each party will serve and file a final, revised witness list   *   *   *   As to each witness so listed (even though the witness may have been deposed), counsel will disclose the testimony expected to be elicited from that witness at trial. The disclosure will be specific and not general, the purpose being to avoid surprise and delay at trial and to give opposing counsel an adequate basis for developing cross-examination.[13]

This section of the final pre-trial order is based on the court's inherent power to control the proceedings before it and advances the goals reflected in Fed. R. Civ P. 1 directing district courts to apply the rules in a fashion which will "secure the just, speedy, and inexpensive determination of every action and proceeding."

Most lawyers take the order to heart, and it is rare to see a motion of the sort now under consideration. Unfortunately, it is clear that with respect to a number of witnesses, Montagne's lawyer has not done so. However, the exclusion of a witness' testimony which is sought by Safeco is not the only sanction which might be imposed. The rule concerning failure to comply with pre-trial orders is Fed. R. Civ. P. 16(f)(1)(C). It specifically indicates that the court may "issue any just orders, including those authorized by Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii) . . . ."

The court has considered the sanctions listed in Rule 37(b)(2)(A) as well as others that might be just in the circumstances. With respect to those witness descriptions which the court finds inadequate, a primary consideration in fashioning an appropriate sanction is that trial is not set to commence until February 2, 2009, and the final pre-trial conference is set for the afternoon of January 23, 2009, so there is time for Montagne to cure his failure to adequately describe the testimony he expects to elicit from the witnesses and time for Safeco to use the fuller descriptions in its trial preparations.

The first three witnesses whose testimony Safeco asks the court to exclude are John Hildebrand, Elizabeth Strain, and Kim Smith. Each is, or was, a Safeco employee. Montagne describes Hildebrand's testimony as follows: "Safeco employee who was designated by Safeco to testify about its claims handling procedures and who is

---

[13] *Id.*

-9-

expected to testify about Montagne's Safeco claims and Safeco's adjustment procedures, as well as Safeco's finances in any punitive phase."[14] For Strain and Smith, Montagne provides this description: "Safeco employee who is expected to testify about Montagne's Safeco claims and how Safeco adjusts claims."[15]

Obviously, Montagne has taken a minimalist approach to describing the testimony he expects to elicit from these witnesses. Just how minimalist is underscored by comparing Montagne's description with the description of the testimony for the same three people on Safeco's witness list.[16] However, when evaluating the adequacy of the descriptions, it bears noting that all three are, or were, Safeco employees concerning whose universe of possible testimony, Safeco is doubtless well informed. Thus, the concern about an inadequate description depriving defense counsel of an opportunity to prepare cross-examination is reduced. The court will require Montagne to file adequate descriptions of the testimony of each of the three witnesses (in Strain's case it appears that would consist of counter-designations of her deposition testimony) no later than 12:30 PM on January 23, 2009. While this is short notice, especially given that Montagne's lawyer is traveling and will not return until January 20, 2009,[17] the fact is that Montagne's lawyer has known of the need to provide an adequate description of his witnesses' testimony since the final pre-trial order was filed on July 8, 2008, more than seven months ago. Moreover, this close to the trial date he should certainly know what testimony he expects to elicit from the witnesses. Any alleged shortcoming in the updated descriptions will be addressed at the final pre-trial conference.

There is another issue relating to these three witnesses which arises because Montagne has indicated that the testimony of Hildebrand, Strain, and Smith will be "telephonic." Because it appears that these three witnesses will be presented live or via deposition by Safeco, Montagne will be able to examine them (or designate deposition

---

[14] Doc. 79 at p. 2.

[15] *Id.*

[16] Doc. 78 at pp. 1-6.

[17] Doc. 112-2, Affidavit of Jeff Barber at ¶ 2.

passages), so any issue relating to telephonic testimony can be avoided. For the convenience of any of these witnesses who do travel to Anchorage for trial, the court will, as Montagne suggests it might, permit Montagne to elicit testimony from them during cross-examination which is outside the scope of direct. This is a common practice in this court where witness who hail from places far from Alaska are not unusual. This practice is most easily used when the testimony on cross-examination relates to a defendant's case, because of the possibility that a plaintiff's case would be subject to dismissal pursuant to Fed. R. Civ. P. 50(a)(2). To allow Rule 50 to function as it should in this case, the court will not entertain a Rule 50 motion from Safeco until after the testimony of Hildebrand, Strain, and Smith has been heard.

One final point requires consideration with respect to witness Hildebrand. Montagne has indicated that if the case reaches the stage at which the quantum of punitive damages needs to be considered, he would seek testimony from Hildebrand on Safeco's financial condition. That testimony cannot be elicited during the initial stage of the trial, because Alaska law on punitive damages requires that the fact finder must first determine that punitive damages may be recovered, and only then determine the amount of those damages in a separate proceeding.[18] If Safeco does not call Hildebrand during any possible punitive phase, and if Hildebrand does not volunteer to testify in Montagne's punitive case, Montagne will have to serve a subpoena on Hildebrand.

The next two witnesses whose testimony Safeco asks the court to exclude are Dr. Barrington and Dr. Martin. The court has already ruled in connection with the motion at docket 75 that Montagne's description of the testimony of these witnesses is adequate. There is no need to revisit the issue.

Next, Safeco asks the court to exclude the testimony of State Trooper J. Ransom. Montagne has decided not to call Trooper Ransom as a witness,[19] which moots the issue.

---

[18]AS 09.17.020.

[19]Doc. 101 at p. 3.

Safeco asks the court to exclude the testimony of plaintiff's brother, Ray Montagne, and plaintiff's friends: Chuck Akin, Greg Hansen, Joe Koliadko, Ken Lancaster, and Larry Williamson. The testimony of each is described as follows on Montagne's witness list: "[Witness] is expected to testy about before and after condition and Montagne's history, projects and his effort to build planes. In particular, that Montagne was healthy, motivated and capable before the collision, but adversely affected following the collision."[20] Although spare, the court finds this description almost adequate in light of the fact that the testimony's exclusive focus is on Montagne, himself, who was deposed by Safeco. What is missing is a description of the temporal period concerning which the witness can testify. To cure this defect, Montagne shall file a modified description of each of these witnesses' testimony which sets out the period of time during which the witness has known Montagne, and the period of time concerning which the witness has sufficient first hand knowledge of Montagne's projects and efforts to build planes, as well as Montagne's health, motivation, and capabilities to offer testimony. This shall be filed by 12:30 PM on January 23, 2009. Any alleged shortcoming will be considered at the final pre-trial conference.

Another witness whose testimony is said by Safeco to be inadequately described is that of Joe Berlier. The description is perfunctory: "Montagne's accountant who is expected to testify about Montagne's before and after financial condition."[21] To cure the defect, Montagne shall file an updated description of the testimony which complies with the court's final pre-trial order by 12:30 PM on January 23, 2009. Any alleged inadequacy will be considered at the final pre-trial conference.

The final witness to whose testimony Safeco objects on the grounds that it is inadequately described is the testimony of Alaska Governor Sarah Palin. Montagne describes her testimony as follows: "Governor Palin is expected to testify about her beliefs regarding Montagne's plan to build planes as described in the *Alaska Journal of*

---

[20]Doc. 79 at pp. 4-6. There are two minor variations. The word "history" appears only in the description of Ray Montagne's testimony, and "his effort" in the Ray Montagne description is changed to "Montagne's effort" in all the others.

[21]*Id.* at p. 4.

*Commerce* article dated 8/8/99 to the extent that Safeco objects to the admissibility of her statements contained therein." The article to which Montagne makes reference is reproduced in his Exhibit 22.

The article reproduced in the exhibit is from the August 8, 1999, edition of the *Alaska Journal of Commerce*. The article's primary topic is potential aircraft manufacturing in Alaska by companies associated with Montagne. One of the locations under consideration is reported to be Wasilla. In the article, Governor Palin, who was at the time the mayor of Wasilla, first reports that Wasilla is "ready for this type of industry." She goes on to lament the fact that 40 percent of Wasilla's work force is employed outside Wasilla, so that it would be nice to have a new local employer. She also says, "We have been watching Kinetic [Montagne's company] for several years, and I think we are ready for them." The article also attributes a general description of recent improvements at the Wasilla airport to Palin.

The court agrees with Safeco that the description of Governor Sarah Palin's testimony is inadequate. Montagne clearly anticipates that her testimony would be limited to that which is in the article, which is nothing more than a local mayor's expression of support for the location of a potential new business in her community. There is nothing to suggest that the mayor actually has any first hand knowledge of the business aside from the "we have been watching" statement. "We" is undefined. There is certainly no suggestion that the mayor herself had any first hand knowledge. Moreover, it strains credulity to suggest that a person who has been serving as the governor of a state for the past two years with all that entails, and who is also fresh off a turn as the Republican nominee for Vice-President of the United States would have meaningful recall of whatever she heard (or personally observed, if she actually did) of Montagne's activities some ten years ago. Even if she did have first hand knowledge which she could still remember, Governor Palin's testimony would at best be cumulative to that of Montagne's brother and his friends whose views would have much more weight under the circumstances. The request to strike Governor Palin from the witness list will be granted.

## IV. CONCLUSION

For the reasons above, **IT IS ORDERED**:

(1) The motion at docket 71 is **GRANTED in part and DENIED in part** such that David Berlier may not give expert opinion testimony pursuant to Fed. R. Evid. 702, but he may offer lay opinion testimony (which includes what he observed and understood in his capacity as an accountant) pursuant to Fed. R. Evid. 701 as more fully elaborated in Section III. A. above.

(2) The motion at docket 72 is **GRANTED in part and DENIED in part** as follows: Exhibits 70 and 71 will not be admitted in evidence. Montagne may offer testimony about what he was told by the spokesman for the Bonati Institute only to the extent authorized in the discussion in Section III. B. above, and if Safeco requests it, the court will give an appropriate limiting instruction of the sort mentioned in Section III. B. above.

(3) The motion at docket 73 is **GRANTED**. Exhibits 74 and 75 will not be admitted in evidence.

(4) The motion at docket 74 is **GRANTED in part and DENIED in part** such that Montagne may not give expert opinion testimony pursuant to Fed. R. Civ. P. 702, but he may offer lay opinion testimony pursuant to Fed. R. Evid. 701 as more fully elaborated in Section III. D.; any testimony about damage calculations and projections presented to Safeco would be subject to a proper limiting instruction if one is requested by Safeco.

(5) The motion at docket 75 is **DENIED** as to Dr. Barrington and Dr. Martin, and **DENIED as moot** as to the other health care providers, for they will not testify at trial.

(6) The motion at docket 76 is **DENIED**.

(7) The motion at docket 85 is **GRANTED** as to Governor Sarah Palin, **DENIED** as to Dr. Barrington and Dr. Martin, and as to the other witnesses discussed in Section III. G. above **DENIED on condition** that Montagne must file adequate updated

-14-

descriptions of the testimony to be elicited from each of such witnesses **not later than 12:30 PM, January 23, 2009**.

    DATED this 19th day of January 2009.

                                      /s/ JOHN W. SEDWICK
                                  UNITED STATES DISTRICT JUDGE